# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL LEE MITCHELL, #21266-045, )
)
              **Petitioner,** )
)
    **vs.** )       **Case No. 19-cv-0539-RJD**[1]
)
WARDEN, FCI-GREENVILLE, )
)
           **Respondent.** )

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

    Petitioner Michael Lee Mitchell, an inmate in the Bureau of Prisons, filed his First Amended Petition for writ of habeas corpus under 28 U.S.C. § 2241 on July 7, 2019.[2] (Doc. 15). In 2009, Mitchell was sentenced to 180 months' imprisonment after pleading guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *United States v. Mitchell*, No. 09-cr-3012-RK-1, Doc. 21 (W.D. Mo. Sept. 9, 2009); (Doc. 19-5 herein). His sentence was enhanced to a 15-year mandatory minimum pursuant to the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. §§ 924(e)(1) and 924(e)(2)(B)(ii),[3] based in part on three prior Missouri felony convictions: namely, 1990 and 2000 convictions for second-degree burglary pursuant to MO. REV. STAT. § 569.170 (1979), and a 2000 conviction for first-degree burglary pursuant to MO. REV. STAT. § 569.160 (1979). Without the ACCA enhancement, Mitchell would have faced a

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). *See* Doc. 14.
[2] Mitchell filed his initial Petition on May 24, 2019, (Doc. 3), along with a Motion to Appoint Counsel filed contemporaneously with his Petition. (Doc. 1). The Court appointed counsel and granted leave to file an amended petition. (Docs. 4, 9).
[3] 18 U.S.C. § 922(e)(1) sets a 15-year mandatory minimum sentence for "a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense[.]" Section 924(e)(2)(B) defines the term "violent felony," to include the enumerated crime of burglary.

statutory *maximum* penalty of 10 years for his felon-in-possession conviction.[4]   18 U.S.C. § 924(a)(2).

Mitchell now invokes *Mathis v. United States*, – U.S. –, 136 S. Ct. 2243 (2016) to challenge his sentence enhancement based on these prior convictions and argues that he is entitled to be resentenced without said enhancement.   Specifically, Mitchell argues that the Missouri statutes of his prior convictions are broader than the federal definition of burglary because they define "inhabitable structures" to include ships, trailers, sleeping cars, airplanes, or other vehicles or structures where people assemble for business, government, education, religion, entertainment or public transportation, which criminalizes the burglary of vehicles (such as buses or subways) not designed for overnight use.   (Doc. 15, pp. 17–22).   This, Mitchell argues, criminalizes more conduct than the "generic" definition of burglary as defined by the Supreme Court.   (*Id.*).

Mitchell also asserts that his underlying conviction under 18 U.S.C. § 922(g) was defective because the government neither alleged nor proved that he had knowledge that he was a convicted felon at the time he possessed a firearm, relying on the recent opinion in *Rehaif v. United States*, – U.S. –, 139 S. Ct. 2191 (2019), in support of this argument.   (Doc. 15, pp. 23–24).

Respondent opposes issuance of the Writ on several grounds.   First, in an argument he acknowledges is inconsistent with the current law of the Seventh Circuit, Respondent contends

---

[4] Mitchell has 3 other prior convictions which were considered by the sentencing court.  (Doc. 15, pp. 2, 22; Doc. 18-1, p. 6, ¶ 21).  In the briefing related to his successive § 2255 motion, Mitchell conceded that his Greene County, Missouri conviction for manufacturing methamphetamine qualified as a "serious drug offense" for sentence enhancement purposes.  (Doc. 19, p. 9).  However, the Government conceded that Mitchell's Texas County, Missouri sexual assault conviction could no longer be counted as a "violent felony" under the ACCA after *Samuel Johnson v. United States*, 576 U.S. –, 135 S. Ct. 2551 (2015).  (Doc. 15, p. 22; Doc. 19, p. 9).  The last conviction was in Phelps County, Missouri, for possession of ephedrine with intent to manufacture methamphetamine.  Mitchell argues that because the maximum penalty for that offense was only 4 years, the court could not have counted it as a "serious drug offense" under the ACCA. (Doc. 15, pp. 22-23).  Regardless of whether that argument is accepted, if Mitchell's 3 burglary convictions are discounted, he no longer has 3 convictions for a violent felony or serious drug offense, as required for the ACCA's 15-year-minimum sentence enhancement to apply.

that inmates who have previously sought post-conviction relief under § 2255 may not rely upon § 2255(e)'s savings clause to challenge their sentences via a § 2241 petition. (Doc. 19, pp. 15–23). Respondent also argues that (1) Mitchell knowingly and voluntarily waived his right to collateral review of his sentence, foreclosing his *Mathis* claim (*id*. at pp. 23–27); (2) Mitchell cannot properly bring his § 2241 claim via § 2255(e)'s savings clause because his *Mathis* theory does not rely on a new rule of statutory interpretation that applies retroactively on collateral review, (*id*. at pp. 27–31); (3) Mitchell's *Mathis* claim fails on its merits because Missouri's first- and second-degree burglary statutes are properly considered violent felonies within the meaning of the ACCA, (*id*. at pp. 32–42); and (4) Mitchell's *Rehaif* claim fails on its merits because Mitchell was not convicted of "a crime of which he was innocent," and demonstrably possessed the knowledge that he was a convicted felon to support his felon-in-possession conviction under 18 U.S.C. § 922(g)(1). (Doc. 19, pp. 42–50).

Mitchell replied to Respondent's Response. (Doc. 21). This matter is now ripe for resolution. For the reasons discussed below, Mitchell's First Amended Habeas Petition (Doc. 15) will be **GRANTED IN PART** to the extent that it relies on *Mathis v. United States*, – U.S. –, 136 S. Ct. 2243 (2016).

### Relevant Facts and Procedural History

#### Plea and Sentencing

On May 13, 2009, Mitchell pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *United States v. Mitchell*, No. 09-cr-3012-RK-1, Doc. 15 (W.D. Mo. May 13, 2009); (Doc. 19-3 herein). Mitchell entered into a written Plea Agreement in which he agreed that he was properly considered an Armed Career Criminal based on his criminal history, which explicitly included his prior Missouri first- and second-degree

burglary convictions, and also agreed that the minimum penalty for his conviction was fifteen (15) years imprisonment. *Id.* at ¶¶ 2–5. Mitchell also agreed that he:

> expressly waives his right to appeal his sentence, directly or collaterally, on any ground except a sentence imposed in excess of the statutory maximum or an illegal sentence, that is, sentencing error more serious than a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence.

*Id.* at ¶ 15.

The indictment charged that Mitchell had "been convicted of crimes punishable by imprisonment for terms exceeding one year" and thereafter "knowingly possess[ed] a firearm" in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1), but did not specifically and separately allege that Mitchell had knowledge of his convicted-felon status when he possessed a firearm. *Mitchell*, No. 09-cr-3012-RK-1, Doc. 1, p. 1 (W.D. Mo. Feb. 24, 2009); (Doc. 19-2 herein). However, in the Plea Agreement, Mitchell did affirmatively agree that he "knowingly committed [the] offense [charged in the indictment], and is in fact guilty of [said] offense," as well as agreeing that he "ha[d] previously been convicted of" several "felony offenses" prior to his possession of the firearm in question. Doc. 19-2, pp. 1–3.

Mitchell's Presentence Report ("PSR") determined that his prior criminal history, including his three Missouri burglary convictions, qualified him for the ACCA enhancement and set his minimum term of imprisonment at 15 years (180 months) pursuant to 18 U.S.C. §§ 922(g)(1) and 924(e). (Doc. 18-1, pp. 3, 6, 9–13, 22). In an addendum to the PSR, Mitchell lodged several objections to some of the information contained therein to preserve certain objections under the Fifth and Sixth Amendments of the United States Constitution—however, Mitchell did not object to the PSR's inclusion of "information expressly contained in the charging documents of conviction, written plea agreements, judgments and transcripts of the change of plea

or sentencing hearings" as to his criminal history and prior convictions referenced in the PSR. *Id.* at pp. 25–26.

The PSR determined Mitchell's Sentencing Guideline range to be 168 to 210 months' imprisonment based on a total offense level of 30 and a criminal history category of VI, but his status as an armed career criminal resulted in an effective Guideline range of 180 to 210 months' imprisonment. (Doc. 18-1, p. 22, ¶ 65). Mitchell was ultimately sentenced to 180 months imprisonment, five years supervised release, and a $100 special assessment. *Mitchell*, No. 09-cr-3012-RK-1, Doc. 21 (Sept. 9, 2009); (Doc. 19-5 herein).

**Post-Conviction Challenges**

Mitchell did not file a direct appeal. After being sentenced, Mitchell filed his first motion under 28 U.S.C. § 2255, in which he argued that the statute of his conviction, 18 U.S.C. § 922(g)(1), violated the Second Amendment, rendering his incarceration a violation of his Fifth Amendment due process rights and his guilty plea involuntary. *Mitchell*, No. 09-cr-3012-RK-1, Doc. 25, p. 1. This motion was summarily denied by the sentencing court, and Mitchell did not appeal that decision. *Id.* at p. 2.

Mitchell filed an application for authorization to file a successive § 2255 motion following the Supreme Court's decision in *Samuel Johnson v. United States*, 576 U.S. –, 135 S. Ct. 2551 (2015), and the Eighth Circuit granted his application on May 17, 2016. *Mitchell v. United States*, No. 15-3295 (8th Cir. 2016). Mitchell proceeded with the § 2255 motion in the district court, arguing that *Johnson*'s invalidation of the ACCA's residual clause rendered his ACCA enhancement void because his prior convictions qualified as predicate offenses only under the now-unconstitutional residual clause. *Mitchell v. United States*, No. 16-cv-3194-RK, Doc. 1 (W.D. Mo. May 19, 2016). During the pendency of this motion, the Supreme Court decided *Mathis*

*v. United States*, – U.S. –, 136 S. Ct. 2243 (2016), and Mitchell incorporated additional arguments based on *Mathis* into his reply briefing.  *Id*. at Doc. 7, pp. 3–10.

The district court initially granted this § 2255 motion, citing both *Johnson* and *Mathis* in support of re-sentencing Mitchell without the ACCA enhancement.  *Id*. at Doc. 9.  However, in a subsequent Rule 59(e) motion to alter or amend the judgment, the government successfully argued that Mitchell's claims were based wholly on *Mathis*, a statutory interpretation case, and completely unrelated to *Johnson*, a constitutional law case, therefore taking Mitchell's motion outside the permissible scope of a § 2255 motion.  *Id*. at Doc. 26 (order granting Rule 59(e) motion, denying § 2255 motion, amending judgment, and denying a certificate of appealability).  The Eighth Circuit later affirmed the denial of a certificate of appealability, and dismissed Mitchell's appeal.  *Mitchell v. United States*, No. 18-3249 (8th Cir. May 21, 2019).  Mitchell then filed the instant habeas action in May 2019.  (Doc. 3).

## Applicable Legal Standards

Generally, petitions for writ of habeas corpus under 28 U.S.C. § 2241 may not be used to raise claims of legal error in conviction or sentencing, but are instead limited to challenges regarding the execution of a sentence.  *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998).

Aside from the direct appeal process, a prisoner who has been convicted in federal court is generally limited to challenging his conviction and sentence by bringing a motion pursuant to 28 U.S.C. § 2255 in the court which sentenced him.  A § 2255 motion is ordinarily the "exclusive means for a federal prisoner to attack his conviction."  *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003).  And, a prisoner is generally limited to only *one* challenge of his conviction and sentence under § 2255.  A prisoner may not file a "second or successive" § 2255 motion unless a

panel of the appropriate court of appeals certifies that such motion contains either 1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or 2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

However, it is possible, under very limited circumstances, for a prisoner to challenge his federal conviction or sentence under § 2241. 28 U.S.C. § 2255(e) contains a "savings clause" which authorizes a federal prisoner to file a § 2241 petition where the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). *See United States v. Prevatte*, 300 F.3d 792, 798–99 (7th Cir. 2002). The Seventh Circuit construed the savings clause in *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998): "A procedure for postconviction relief can be fairly termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense."

The Seventh Circuit has explained that, in order to fit within the savings clause following *Davenport,* a petitioner must meet three conditions. First, he must show that he relies on a new statutory interpretation case rather than a constitutional case. Secondly, he must show that he relies on a decision that he could not have invoked in his first § 2255 motion *and* that case must apply retroactively. Lastly, he must demonstrate that there has been a "fundamental defect" in his conviction or sentence that is grave enough to be deemed a miscarriage of justice. *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013). *See also Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019); *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012).

Since *Davenport*, the Seventh Circuit has made it clear that "there must be some kind of

structural problem with § 2255 before § 2241 becomes available. In other words, something more than a lack of success with a § 2255 motion must exist before the savings clause is satisfied." *See Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015).

## Analysis

For the purpose of preserving the issue, Respondent first presents the Court with an argument he admits is inconsistent with the binding precedent of this Circuit—that is, "inmates, like petitioner, who previously challenged their convictions or sentences in a § 2255 petition may not later challenge their convictions under § 2255(e)'s 'saving clause' based on a new case of statutory interpretation where the underlying claim was cognizable, but unraised, in the previous § 2255 proceeding even if that claim would have likely failed under existing circuit precedent." (Doc. 19, pp. 15–27). As stated above, the Seventh Circuit, like the majority of the Circuit Courts of Appeals,[5] has specifically held to the contrary dating back to *In re Davenport* in 1998, and has reiterated its savings clause test as recently as September 2019. *See Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019). Because *Davenport* and its progeny remain binding precedent on this Court, this argument must be rejected out of hand.

## Effect of Plea Agreement

The Court finds Respondent's argument that the terms of Mitchell's written guilty plea agreement waived his right to bring his *Mathis* argument in this action unpersuasive. It is true that the Seventh Circuit and other courts in this District have enforced appeal and collateral attack

---

[5] The Seventh Circuit's interpretation of § 2255(e)'s savings clause is largely in line with a majority of the Circuit Courts of Appeals' jurisprudence on this issue. *See, e.g.*, *In re Dorsainvil*, 119 F.3d 245, 251 (3d Cir. 1997); *Triestman v. United States*, 124 F.3d 361, 377 (2d Cir. 1997); *In re Jones*, 226 F.3d 328, 333–34 (4th Cir. 2000); *Reyes-Requena v. United States*, 243 F.3d 893, 904 (5th Cir. 2001); *Martin v. Perez*, 319 F.3d 799 (6th Cir. 2003); *Ivy v. Pontesso*, 328 F.3d 1057, 1059–60 (9th Cir. 2003); *Abdullah v. Hedrick*, 392 F.3d 957, 960–63 (8th Cir. 2004); *see also Wright v. Spaulding*, – F.3d –, 2019 WL 4493487, at *3 (6th Cir. Sept. 19, 2019) (collecting cases).

waivers where a petitioner only reserved the right to collaterally attack a sentence "imposed . . . in excess of the Sentencing Guidelines" or a sentence not "within the maximum provided in the statutes of conviction." *See United States v. Carson*, 855 F.3d 828, 829–31 (7th Cir. 2017); *Wilson v. Werlich*, No. 17-cv-778-DGW, 2019 WL 2524699, at *4–6 (S.D. Ill. June 19, 2019).

However, unlike the plea language at issue in *Carson* and *Wilson*, Mitchell's plea agreement carved out an additional exception to his collateral review waiver, reserving the right to appeal both a "sentence imposed in excess of the statutory maximum" <u>and</u> "an illegal sentence." (Doc. 19-3, p. 11). The Seventh Circuit has repeatedly held that improperly or inaccurately labeling someone as an armed career criminal or career offender under a mandatory, non-discretionary sentencing scheme such as the ACCA or the pre-*Booker* Sentencing Guidelines, respectively, is an "illegal" designation that "goes to the fundamental legality of [a prisoner's] sentence and asserts an error that constitutes a miscarriage of justice." *See Narvaez v. U.S.*, 674 F.3d 621, 623, 628, 630 (7th Cir. 2011); *Brown v. Caraway*, 719 F.3d 583, 587–88 (7th Cir. 2013); *Light v. Caraway*, 761 F.3d 809, 812–13 (7th Cir. 2014) (the misapplication of the ACCA's armed career criminal designation, like the misapplication of a mandatory career offender Guideline designation, is a "fundamental sentencing defect" that "result[s] in a miscarriage of justice"); *Chazen*, 938 F.3d at 856.

Furthermore, in the Eighth Circuit, where Mitchell entered his plea, precedent holds that "defendants cannot waive their right to appeal an illegal sentence[.]" *DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000). And, as discussed below, the Eighth Circuit has determined that the Missouri burglary statutes under which Mitchell was convicted do not support an ACCA enhancement after *Mathis*. *United States v. Naylor*, 887 F.3d 397, 400 (8th Cir. 2018).

Because Mitchell, unlike the petitioners in *Carson* and *Wilson*, affirmatively reserved the

right to collaterally attack "an illegal sentence" <u>in addition to</u> a "sentence imposed in excess of the statutory maximum," (Doc. 19-3, p. 11), he has not waived his claim that the ACCA's armed career criminal designation was improperly applied to him under *Mathis*.

### Savings Clause of 28 U.S.C. § 2255(e)

The next question in this case is whether Mitchell's claim may be brought under the savings clause of 28 U.S.C. § 2255(e). A claim brought pursuant to *Mathis v. United States*, 136 S. Ct. 2243 (2016), satisfies the first *Davenport* condition, as *Mathis* is a statutory-interpretation case. *See Holt v. United States*, 843 F.3d 720, 722 (7th Cir. 2016); *Dawkins v. United States*, 829 F.3d 549, 550–51 (7th Cir. 2016). As to the third condition, "a defendant sentenced in error as an armed career criminal satisfies the 'miscarriage of justice' requirement." *Chazen*, 938 F.3d at 856 (citing *Light v. Caraway*, 761 F.3d 809, 813 (7th Cir. 2014)). Here, the ACCA enhancement increased Mitchell's potential punishment for his felon-in-possession conviction from a statutory maximum of 10 years, to a statutory minimum of 15 years' imprisonment. These precedents indicate that Mitchell has satisfied the first and third elements of the savings clause.

As to the second condition, Mitchell could not have invoked the 2016 *Mathis* decision in his initial § 2255 motion, which he filed in 2011. The Seventh Circuit has stated that "[a]n independent claim based on *Mathis* must be brought, if at all, in a petition under 28 U.S.C. § 2241." *Dawkins*, 829 F.3d at 551 (citing *Brown v. Caraway*, 719 F.3d 583, 594–96 (7th Cir. 2013) and *In re Davenport*, 147 F.3d 605, 611–12 (7th Cir. 1998)). Regarding the retroactive application of *Mathis*, the Seventh Circuit observed in *Holt v. United States*, 843 F.3d at 722, that "substantive decisions such as *Mathis* presumptively apply retroactively on collateral review." *See also Montgomery v. Louisiana*, — U.S. —, 136 S. Ct. 718, 729–32 (2016) ("This Court's precedents addressing the nature of substantive rules, their differences from procedural rules, and their history

of retroactive application establish that the Constitution requires substantive rules to have retroactive effect regardless of when a conviction became final."); *Davis v. United States*, 417 U.S. 333 (1974); *Montana v. Cross*, 829 F.3d 775, 783–84 (7th Cir. 2016).

In *Mathis v. United States*, — U.S. —, 136 S. Ct. 2243 (2016), the Supreme Court addressed the question of whether an Iowa burglary conviction was properly used to enhance a federal sentence under the Armed Career Criminal Act ("ACCA"). Only where the elements of the predicate offense match or are narrower than the elements of the "generic" offense (in Mathis' case, generic burglary) may the prior conviction be used as the basis for enhancing a federal sentence. *Mathis*, 136 S. Ct. at 2247. The Iowa statute set forth several alternative locations where the burglary may take place, including a "building, structure, . . . land, water, or air vehicle." *Id.* at 2250. The *Mathis* court determined that the statute was "indivisible," describing a single crime with several possible modes, or "means," of commission. Because the generic offense of burglary is limited to unlawful entry into a "building or other structure" with intent to commit a crime, the *Mathis* Court found the Iowa statute to be overbroad. *Mathis*, 136 S. Ct. at 2248, 2250 (quoting *Taylor v. United States*, 495 U.S. 575, 598 (1990)). As such, the ACCA enhancement based on that Iowa conviction could not stand – even though the records of the defendant's Iowa case contained facts showing that his actual offense conduct matched the elements of generic burglary.

*Mathis* resolved a split among the circuits regarding under what circumstances and for what purpose a court may consult state charging or sentencing documents (known as the "modified categorical approach") to analyze whether a previous conviction, under an alternatively-phrased statute, may qualify as a career-criminal predicate offense. *See Chazen*, 938 F.3d at 857–59. *See also Shepard v. United States*, 544 U.S. 13, 26 (2005) (limiting the case documents which may be consulted by a court when comparing non-generic statute of conviction to generic offense). *Mathis*

clarified that only if a statute is "divisible" – that is, it sets forth one or more *elements* of the offense in the alternative, each of which amounts to a distinct offense – may the modified categorical analysis be used to determine which of the alternatives formed the basis of the conviction in question, and whether the elements of that crime match the elements of the generic offense. On the other hand, if the statute is "indivisible" – defining a single offense, but listing alternative factual "means" of committing the crime – the modified categorical approach cannot be used to refer to documents or engage in other fact-finding to discover the actual conduct that led to the prior conviction. *Chazen*, 938 F.3d at 857–59; *see also Van Cannon v. United States*, 890 F.3d 656, 662–63 (7th Cir. 2018).

Before *Mathis*, the Eighth Circuit and others had rejected the distinction between "means" and "elements," and applied the modified categorical analysis to all statutes listing either alternative elements or alternative means, when determining whether a prior conviction should count for an armed-career-criminal enhancement. *Chazen*, 938 F.3d at 857–59. Meanwhile, other circuits adhered to the means/elements distinction in determining whether a statute was divisible and thus subject to the modified categorical analysis. *Id.* *Mathis* rejected the approach that had been used in the Eighth, Tenth, and Sixth Circuits, holding that the modified categorical approach may not be used in the case of an indivisible statute listing multiple means to satisfy a single element. *Id.*; *Mathis*, 136 S. Ct. at 2253, 2248. Thus, if an "indivisible" statute lists alternative factual means to satisfy a single element, and if the alternative means include conduct that sweeps more broadly than the generic crime, then a conviction under the statute may not be used as a career-offender predicate offense, even if the particular defendant's conduct fell within the scope of the generic offense. *Mathis*, 136 S. Ct. at 2252 (sentencing court "cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense");

*Van Cannon*, 890 F. 3d at 663 ("the modified categorical approach has no role to play" if the statute is indivisible).

## Retroactive Application of *Mathis* on Collateral Review

As to this second condition of the savings clause test, Respondent argues that "the holding in *Mathis* did not announce a 'new' rule; rather, according to the Court's own opinion, it merely applied its prior precedent." (Doc. 19, p. 29).

This argument has found success in this District in the past, as Respondent points out. In *Blue v. Werlich*, the Court found that *Mathis* did not constitute a new rule of statutory construction, noting the Supreme Court's statement in *Mathis* that it was applying the analysis first articulated in *Taylor v. United States*, 495 U.S. 575, 600–02 (1990). *Blue v. Werlich*, Case No. 17-cv-1215-DRH, 2018 WL 6102844 (S.D. Ill. Nov. 21, 2018). The Court in *Blue* concluded that because the reasoning in *Mathis* flowed from the precedents of *Taylor* and *Descamps v. United States*, 570 U.S. 254 (2013), the § 2241 petitioner could have raised a *Mathis*-like statutory interpretation argument in a timely-filed motion under 28 U.S.C. § 2255. *Blue*, 2018 WL 6102844 at *5.

However, the Seventh Circuit has since spoken directly on this issue, affirming the grant of habeas relief to a § 2241 petitioner based on his *Mathis* claim and confirming the retroactive applicability of *Mathis* in line with its previous statements in *Holt* and *Dawkins*. *Chazen v. Markse*, 938 F.3d 851 (7th Cir. Sept. 9, 2019). On Chazen's substantive issue, the Seventh Circuit had previously found that a Minnesota second-degree burglary conviction no longer qualified as a "violent felony" for sentence-enhancement purposes. *Chazen*, 938 F.3d at 859 (citing *Van Cannon v. United States*, 890 F.3d 656, 665 (7th Cir. 2018) (finding the Minnesota statute to be indivisible and overbroad)).

On the question of whether *Mathis* would afford relief in the context of § 2241, the court

acknowledged that in past cases, it had articulated the second savings-clause requirement in varying ways. *Chazen*, 938 F.3d at 861–62. These ranged from merely requiring a showing that the new statutory-interpretation case had not been decided at the time of the habeas petitioner's first § 2255 motion (*e.g.*, *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012)), to the "slightly higher standard" of demonstrating that the petitioner had been "foreclosed by binding precedent" from raising his claim at the time of his initial § 2255 motion, or that it "would have been futile" to assert the claim at that time because "the law was squarely against him." *Chazen*, 938 F.3d at 861–62 (citing *Brown v. Caraway*, 719 F.3d 583, 595 (7th Cir. 2012), and *Beason v. Marske*, 926 F.3d 932, 936 (7th Cir. 2019)). In Chazen's case, the court found that at the time he sought relief under § 2255 in 2013, there was "no doubt" that his claim was foreclosed by precedent in the Eighth Circuit (where he was convicted) holding that his Minnesota burglary conviction qualified as a violent felony for the federal sentence enhancement. *Chazen*, 938 F.3d at 862. Further, *Mathis* "fits the bill" as a basis for relief in § 2241, as an "intervening case of statutory interpretation [which] opens the door to a previously foreclosed claim." *Id.* It was only after *Mathis* that the Seventh and Eighth Circuits concluded that the Minnesota burglary statute is indivisible, and too broad to serve as a predicate offense for a career-criminal enhancement. *Id.* Thus, "*Mathis* is 'new' as a functional and practical matter for federal inmates seeking relief from a mandatory minimum sentence under the Act." *Chazen*, 938 F.3d at 862.[6]

In light of the recent opinion in *Chazen*, as well as the Seventh Circuit's discussion of *Mathis* in *Van Cannon*, the Court concludes that *Mathis* set forth a new substantive rule of statutory

---

[6] The *Chazen* court stopped short, however, of reaching a blanket conclusion that *Mathis* would afford relief in all circumstances to a § 2241 petitioner: "In these circumstances, where the government has conceded that *Mathis* is retroactive and Chazen was so clearly foreclosed by the law of his circuit of conviction at the time of his original § 2255 petition, we conclude that Chazen has done enough to satisfy the savings clause requirements." *Chazen*, 938 F.3d at 863.

construction that should have retroactive application in a § 2241 petition. *See Van Cannon v. United States*, 890 F.3d at 663; *Holt v. United States*, 843 F.3d at 721–22 ("substantive decisions such as Mathis presumptively apply retroactively on collateral review"). The *Mathis* opinion, by prohibiting the use of certain prior convictions as sentence-enhancing predicates, meets the criteria for retroactive application because it places "certain kinds of primary, private individual conduct beyond the power of criminal law-making authority to proscribe," and is a rule "prohibiting a certain category of punishment for a class of defendants because of their status or offense." *See Montgomery v. Louisiana*, – U.S. –, 136 S. Ct. 718, 729 (2016).

### Mitchell's *Mathis* Claim Was Previously Unavailable

"*Davenport*'s second condition has two components: retroactivity and prior unavailability of the challenge." *Montana v. Cross*, 829 F.3d 775, 783 (7th Cir. 2016). In order to bring his claim within the scope of the savings clause, Mitchell must show that he could not have previously raised the claim he now presents. As noted above, Mitchell could not have invoked the 2016 *Mathis* decision in the § 2255 motion he filed in 2011. But this does not dispose of the inquiry.

In two recent opinions, the Seventh Circuit discussed the test to be applied to evaluate the "prior unavailability" component of the second savings clause condition. In *Beason v. Marske*, the court stated that a § 2241 petitioner must show that it "would have been futile" to raise his argument in his § 2255 motion because the "law was squarely against him." *Beason*, 926 F.3d 932, 936 (7th Cir. June 24, 2019) (quoting *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015)). The *Chazen* court, without stating which of its various articulations of this test should control going forward, concluded that Chazen satisfied this savings clause condition because his claim had clearly been foreclosed by the law in his circuit of conviction at the time he might have raised it in a § 2255 motion. *Chazen v. Marske*, 938 F.3d 851, 862–63 (7th Cir. 2019). *See also*

*Light v. Caraway*, 761 F.3d 809, 813 (7th Cir. 2014) (noting that the circuit had "applied two different tests" as to prior unavailability under *Davenport*).

Respondent asserts that Mitchell's argument under *Mathis* was not actually made pursuant to a new rule of statutory interpretation. (Doc. 19, pp. 29–31). Respondent does not, however, go past this threshold issue into the next inquiry—whether Mitchell's *Mathis* claim was unavailable at the time he raised his first § 2255 motion. (Doc. 28, pp. 1–54). Seventh Circuit precedent on this issue focuses on whether the law in the circuit of conviction would have been against the habeas petitioner. *See Chazen*, 938 F.3d at 862–63; *Prevatte v. Merlak*, 865 F.3d 894, 897 (7th Cir. 2017) (petitioner did not meet the second prong; he could have raised his argument in an earlier proceeding because it was not foreclosed by circuit precedent); *Montana v. Cross*, 829 F.3d 775, 784 (7th Cir. 2016); *Light*, 761 F.3d at 813. As such, the relevant question is whether Mitchell could have raised a *Mathis*-like argument in the Eighth Circuit in 2011.

Mitchell asserts that such an argument was not reasonably available to him in the Eighth Circuit at the time of his § 2255 motion, (Doc. 21, p. 19), and the Court agrees. Mitchell's chief citation in support of this argument is *United States v. Naylor*, 887 F.3d 397, 400 (8th Cir. 2018) (en banc). (Doc. 15, pp. 11–22; Doc. 21, pp. 9–10). In *Naylor*, the Eighth Circuit analyzed Missouri's second-degree burglary statute,[7] contrasting its prior precedents with the Supreme Court's most recent guidance in *Mathis*. *Naylor*, 887 F.3d at 399–407. Before *Mathis*, the Eighth Circuit had concluded Missouri's second-degree burglary statute was a categorical match to the generic definition of burglary set forth in *Taylor v. United States*, 495 U.S. 575, 602 (1990). *See United States v. Whitfield*, 907 F.2d 798, 800 (8th Cir. 1990). In *Whitfield*, the Eighth Circuit

---

[7] Mitchell's three prior Missouri burglary convictions include a 2000 conviction for first-degree burglary. However, the two crimes share the same unlawful entry and locational elements. MO. REV. STAT. §§ 569.160, 569.170, 569.010(2) (1979); *Naylor*, 887 F.3d at 404. Thus, if one statute is overbroad due to its locational element, both are.

analyzed the same Missouri second-degree burglary statute at issue in *Naylor* and the present case after Whitfield challenged the use of his burglary conviction as an ACCA predicate offense. *Id*. at 800. However, the *Whitfield* panel summarily concluded that the Missouri second-degree burglary statute "contains the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id*. (internal citations omitted). Thus, *Whitfield* held that a conviction for second-degree burglary in Missouri "is a violent felony for purposes of enhancement [under the ACCA]." *Id*. The Eighth Circuit applied this approach without determining whether the statute itself listed alternative elements or alternative means, as explained much later in *Mathis*. *Id*.

Even after *Mathis*, the Eighth Circuit for a time held that Missouri's second-degree burglary statute sufficiently matched the generic definition of burglary under the modified categorical approach. *United States v. Sykes*, 844 F.3d 712, 715–16 (8th Cir. 2016). However, *Sykes* did not discuss in-depth whether the Missouri statute was divisible, an important prerequisite in determining whether to apply the categorical approach or modified categorical approach. *Naylor*, 887 F.3d at 400. It was not until 2018, on an *en banc* rehearing, that the Eighth Circuit explicitly recognized that it could only apply the modified categorical approach to Missouri's burglary statute if it is divisible. *Naylor*, 887 F.3d at 400. After consulting Missouri case law, statutory text, and other relevant sources, the Eighth Circuit concluded that "the Missouri second-degree burglary statute is indivisible as to the phrase 'building or inhabitable structure.'" *Id*. at 406–07. Because the Missouri statute's definition of "inhabitable structure" is "broader than the locational element of generic burglary," *id.* at 400, a second-degree burglary conviction may no longer serve as a predicate violent felony under the ACCA's enumerated clause. *Id*. at 399 (overruling *Sykes*' contrary holding).

As such, at the time of Mitchell's direct appeal and first § 2255 motion, Eighth Circuit precedent would have foreclosed his current theory under *Mathis*. Only in 2018 did the Eighth Circuit recognize that it may not apply the modified categorical approach to Missouri's second-degree burglary statute without determining whether the statute was divisible or indivisible. After conducting that necessary analysis, the Eighth Circuit concluded that (1) the statute was indivisible, and (2) the statute was overbroad for the purposes of the ACCA. *See Whitfield*, 907 F.2d at 800; *Sykes*, 844 F.3d at 715–16; *Naylor*, 887 F.3d at 400, 406–07.

Based on *Whitfield* and subsequent cases decided before the 2018 *Naylor* opinion, the Court concludes that it would have been futile for Mitchell to have raised the challenges he sets forth herein in the Eighth Circuit at the time of his first § 2255 motion. Accordingly, Mitchell's *Mathis* claim satisfies the second prong of the *Davenport* test. Because Mitchell has satisfied all three prongs of § 2255(e)'s savings clause, the Court proceeds to the merits of his *Mathis* claim.

## Mitchell's Missouri Burglary Convictions Do Not Categorically Match the Generic Definition of Burglary

Mitchell challenges the classification of his 1990 and 2000 convictions for second-degree burglary pursuant to MO. REV. STAT. § 569.170 (1979), and his 2000 conviction for first-degree burglary pursuant to MO. REV. STAT. § 569.160 (1979), as violent felonies under the enumerated clause of the ACCA. 18 U.S.C. § 924(e)(2)(B)(ii) ("[T]he term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that . . . is **burglary**, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]") (emphasis added).

Though not raised by the parties, a review of the Seventh Circuit's recent decision in *Chazen v. Marske*, 938 F.3d 851 (7th Cir. 2019), identifies a potential issue for the Court to consider: which Circuit Court of Appeals' substantive law should apply to the merits of Mitchell's

*Mathis* claim—the Seventh Circuit, where Mitchell is currently incarcerated, or the Eighth Circuit, where Mitchell was convicted and sentenced? As the *Chazen* concurrence noted, the Seventh Circuit has not given explicit guidance on that particular issue. *Id*. at 864–66 (Barrett, J., concurring). In *Chazen*, the government conceded that the substantive law of the Seventh Circuit applied to the merits of Chazen's *Mathis* claim, and the majority opinion accepted that concession at face value without further discussion. *Id*. at 860 ("What is less clear, however, is whether, in evaluating the merits of Chazen's petition, we should apply our own precedent or the precedent of the circuit of conviction . . . [w]e need not decide this issue here because [of the government's concession] that the law of this circuit governs the merits of Chazen's claim.").

In the absence of such a concession by the parties, several district courts in this circuit and others have concluded that the law of the circuit of conviction should apply because the contrary would create "far more arbitrary" results by "bas[ing] the choice of law decision on the fortuitous placement of a prisoner by the Bureau of Prisons, not the more rational factor of the place of conviction." *Hernandez v. Gilkey*, 242 F. Supp. 2d 549, 554 (S.D. Ill. 2001).[8] While the Seventh Circuit has not hesitated to cite to other circuits' analysis and discussion of statutes at issue in any given case, it has never cited these cases' conclusions as mandatory, binding, or otherwise limiting on its own analysis and conclusion. *See, e.g.*, *Van Cannon*, 890 F.3d at 663–64 ("Our job is made easier because the Eighth Circuit preceded us in applying [*Mathis*'] principles to Minnesota's burglary statute. . . . [T]he Eighth Circuit held that the statute is indivisible . . . and we see no reason to disagree with our sister circuit, which has greater familiarity with Minnesota law."); *Light v. Caraway*, 761 F.3d 809, 816 (7th Cir. 2014) ("We decline to contradict the Eighth Circuit's

---

[8] *See also Cano v. Warden USP–Terre Haute*, No. 2:17-cv-441, 2018 WL 3389746 (S.D. Ind. July 12, 2018); *Roberts v. Watson*, No. 16-cv-541, 2017 WL 6375812 (W.D. Wis. Dec. 12, 2017); *accord Burgess v. Williams*, No. 4:18-cv-2643, 2019 WL 2641902 (N.D. Ohio June 27, 2019); *Eames v. Jones*, 793 F. Supp. 2d 747, 749 (E.D.N.C. 2011).

sound interpretation of this statute and thereby create an unnecessary circuit split.").

However, any potential uncertainty as to whether Seventh Circuit or Eighth Circuit substantive law should apply to Mitchell's *Mathis* claim will not change the outcome here—Mitchell's Missouri burglary convictions are improper predicates for his ACCA enhancement under the precedents of either circuit.

At the time of his 2000 conviction, Missouri's first-degree burglary statute provided that:

A person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime:
(1) Is armed with explosives or a deadly weapon or;
(2) Causes or threatens immediate physical injury to any person who is not a participant in the crime; or
(3) There is present in the structure another person who is not a participant in the crime.

MO. REV. STAT. § 569.160 (1979). Likewise, at the time of his 1990 and 2000 convictions, Missouri's second-degree burglary statute provided that:

A person commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein.

MO. REV. STAT. § 569.170 (1979). Both statutes defined "inhabitable structure" as:

[A] ship, trailer, sleeping car, airplane, or other vehicle or structure:
(a) Where any person lives or carries on business or other calling; or
(b) Where people assemble for purposes of business, government, education, religion, entertainment or public transportation; or
(c) Which is used for overnight accommodation of persons. Any such vehicle or structure is "inhabitable" regardless of whether a person is actually present[.]

MO. REV. STAT. § 569.010 (1979). Citing *Mathis*, Mitchell argues that both statutes' locational elements criminalize a plainly overbroad swath of conduct including the burglary of ships, trailers, sleeping cars, airplanes, or any other vehicle or structure where people assemble for

a variety of reasons, not just where people live or are likely to live. (Doc. 15, pp. 17–18; Doc. 21, pp. 9–12). According to Mitchell, both Missouri statutes would cover vehicles not adapted or customarily used for overnight accommodation, such as public buses and subway trains, demonstrating that the locational elements of these statutes are broader than the "generic definition" of burglary as set forth by the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 598 (1990).[9]

Before its decision in *Naylor*, the Eighth Circuit had held that Missouri's burglary statutes' locational element categorically matched the generic definition of burglary, albeit while ignoring entirely the underlying statutory definition of inhabitable structure referenced by the statute. *See Whitfield*, 907 F.2d at 800 (Missouri second-degree burglary is a "violent felony" under the ACCA because its text "contains the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime" without citation or discussion of Missouri's statutory definition of "inhabitable structure"). After *Mathis*, the Eighth Circuit recognized that MO. REV. STAT. § 569.010's definition of "inhabitable structure" was broader than the generic definition of burglary on its face, but determined that the statute presented buildings and inhabitable structures as alternative elements, not alternative means of fulfilling the same locational element. *Sykes*, 844 F.3d at 715–16. It came to that conclusion after employing the modified categorical approach and determining that Sykes' charging and sentencing documents established that his prior burglary convictions were for the burglary of "buildings" and not "inhabitable structures." *Id*. at 715. However, it employed the modified categorical approach without any analysis of whether the statute was divisible or indivisible, with no further discussion

---

[9] The *Taylor* court defined the generic meaning of burglary to be "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id*. This is the generic definition of burglary analyzed in *Mathis*. 136 S. Ct. at 2248.

of the statutory text and Missouri case law interpreting the same, as required by *Mathis*. *Id*. at 715–16; *Mathis*, 136 S. Ct. at 2253, 2248.

Shortly after its decision in *Sykes*, the Eighth Circuit signaled a change in its application of *Taylor* and *Mathis*, and began explicitly analyzing whether an underlying statute was divisible or indivisible by looking to the statutory text and the states' rules of decisions regarding the same before applying the modified categorical approach. *See, e.g.*, *United States v. McArthur*, 850 F.3d 925, 937–40 (8th Cir. 2017) (analyzing Minnesota burglary statutory text and state court decisions regarding same to determine whether statute was divisible or indivisible prior to applying modified categorical approach); *United States v. Crumble*, 878 F.3d 656, 660–62 (8th Cir. 2018). This approach led the Eighth Circuit to re-evaluate its conclusion in *Sykes* with regard to the Missouri's second-degree burglary statute, and to affirmatively recognize the need to determine whether MO. REV. STAT. § 569.070 (1979) was divisible or indivisible prior to applying the modified categorical approach to save the statute from its overbroad language. *Naylor*, 887 F.3d at 399–407.

After an in-depth analysis of Missouri state precedents concerning the statute, the statutory text itself, and other documents such as Missouri's approved charging documents and jury instructions, the *Naylor* panel concluded that "Missouri law establishes that the phrase 'building or inhabitable structure' [in Missouri's burglary statutes] specifies means, not elements." *Id*. at 406. Accordingly, *Naylor* held that the statute's indivisibility, combined with the self-evident overbreadth of its text, meant that convictions pursuant to that statute could not be used as ACCA predicate offenses. *Id*. at 406–07. Thus, under the substantive law of the Eighth Circuit, Mitchell's *Mathis* claim succeeds.

Respondent has not presented the Court with any Seventh Circuit precedent that would lead to an opposite conclusion, and the Court has found none upon its own inquiry. The Seventh

Circuit has not decided a case involving the Missouri statute at issue here. Like the Eighth Circuit in *Naylor*, the Seventh Circuit employs the same analytical steps when determining whether a statute runs afoul of *Taylor* and *Mathis*. *See, e.g.*, *Van Cannon*, 890 F.3d at 662–66 (citing with approval the Eighth Circuit's analysis and conclusion regarding categorical-approach analysis of Minnesota statute); *Smith v. United States*, 877 F.3d 720 (7th Cir. 2017) (analyzing Illinois case law, statutory text, and other documents in determining whether Illinois residential burglary statute is proper predicate offense for ACCA enhancement under *Taylor* and its progeny). And, while not bound by the Eighth Circuit's conclusion, the Seventh Circuit has shown a willingness to rely upon other circuits' interpretation of statutes within their own jurisdiction so long as the same analytical process is employed. *Van Cannon*, 890 F.3d at 662–66.

Though Respondent recognizes *Naylor*'s existence, he argues that the Supreme Court's subsequent decision in *United States v. Stitt*, 139 S. Ct. 399 (2018) effectively abrogated *Naylor* and dictates a different result here. (Doc. 19, p. 32, n. 8, pp. 34–42). At issue in *Stitt* were Tennessee and Arkansas burglary statutes that criminalized the burglary of a "habitation," which included "vehicle[s] . . . designed or adapted for the overnight accommodation of persons" and the burglary of a "residential occupiable structure" which included vehicles "which [are] customarily used for overnight accommodation of persons," respectively. 139 S. Ct. at 404. Contrary to Respondent's argument (Doc. 19, pp. 32, 35-42), the *Stitt* decision did not expand the generic definition of burglary to include the unlawful or unprivileged entry into any location where burglary is likely to present a serious risk of violence, nor did it hold that a burglary statute passes muster under *Taylor* and *Mathis* if it focuses upon circumstances where burglary is likely to present such a risk. *Stitt*'s holding was clear, and limited—the ACCA's statutory definition of "burglary" includes "burglary of a structure or vehicle that has been adapted or is customarily used for

overnight accommodation." *Id.* at 403–04, 407. If Missouri's burglary statutes only expanded their reach to "ship[s], trailer[s], sleeping car[s], airplane[s], or other vehicle[s] or structure[s] . . . used for [the] overnight accommodation of persons," the Court would agree that *Stitt* would dictate a result different from *Naylor*. However, unlike the statutes analyzed in *Stitt*, the Missouri statutes of Mitchell's convictions also criminalized the burglary of "ship[s], trailer[s], sleeping car[s], airplane[s], or other vehicle[s] or structure[s] . . . [w]here people assemble for purposes of business, government, education, religion, entertainment or public transportation." MO. REV. STAT. § 569.010 (1979). Both *Sykes* and *Naylor* recognized these statutes as self-evidently broader than the generic definition of burglary, and *Stitt*'s narrow holding is insufficient to change that conclusion.[10]

For these reasons, the Court concludes that Mitchell's *Mathis* claim succeeds on the merits, and that his 1990 and 2000 Missouri first- and second-degree burglary convictions may not be considered as proper predicates for his ACCA sentence enhancement because of the statutes' overbreadth. Without counting those convictions, Mitchell no longer has the required three predicate "violent felony" offenses to support the application of the 15-year mandatory minimum sentence for his felon-in-possession conviction (Count 1) under 18 U.S.C. § 924(e)(1). Instead, the 10-year maximum sentence in 18 U.S.C. § 924(a)(2) would apply. Accordingly, Mitchell is entitled to be resentenced free of the armed-career-criminal designation that was incorrectly

---

[10] Since *Stitt* was decided in December of 2018, the Eighth Circuit has continued to cite *Naylor* as binding precedent in the context of the ACCA and has not hinted that *Stitt* has put its holding in jeopardy. *See, e.g.*, *Faulkner v. United States*, 926 F.3d 475, 477 (8th Cir. 2019); *Brown v. United States*, 929 F.3d 554, 558–59 (8th Cir. 2019).

imposed upon him.[11] [12]

## Conclusion

Mitchell's First Amended Petition for writ of habeas corpus under 28 U.S.C. § 2241 (Doc.

15), is **GRANTED IN PART** to the extent it relies upon *Mathis v. United States*, – U.S. –, 136 S.

Ct. 2243 (2016). The following relief is **ORDERED:**

1. The career-offender-enhanced sentence of 180 months for Count 1 imposed upon Michael Lee Mitchell by the Western District of Missouri in Case No. 09-cr-3012-RK-1 is **VACATED**.

2. Mitchell shall be resentenced forthwith by the Western District of Missouri.

3. The Clerk of Court shall enter judgment in favor of Mitchell.

4. The Clerk of Court is **DIRECTED** to furnish certified copies of this Order and the Judgment entered in this case to the Bureau of Prisons, the United States Attorney for the Western District of Missouri, and the Clerk of the District court for the Western District of Missouri for filing in Case No. 09-cr-3012-RK-1.

**IT IS SO ORDERED.**

**DATED:  November 8, 2019**

*s/ Reona J. Daly*
**REONA J. DALY**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] Mitchell asserts that he is entitled to immediate release if he is granted relief pursuant to *Mathis*. (Doc. 15, p. 24). This Court need not directly address that assertion; instead, Mitchell's arguments are more appropriately raised in the Western District of Missouri in the context of the resentencing hearing ordered herein.

[12] Because the Court is granting Mitchell relief pursuant to *Mathis*, it need not reach the merits of his claim under *Rehaif v. United States*, though the Court notes the ample evidence presented to it by Respondent that Mitchell was in fact aware of his status as a convicted felon prior to pleading guilty to violating 18 U.S.C. § 922(g)(1). (*See* Doc. 19, pp. 45–53). As Respondent points out, he may be permitted to present additional admissible evidence of Mitchell's actual guilt in the context of habeas corpus, *Bousley v. United States*, 523 U.S. 614, 623–24 (1998), and such evidence appears to be substantial.